IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOLLY A. GRINOLDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 09-95 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Plaintiff's motion for summary judgment [Document # 7] be denied. It is further recommended that the motion for summary judgment filed by the Commissioner [Document # 9] be granted. The Commissioner's decision denying Plaintiff's application for Supplemental Security Income and Disability Insurance Benefits should be affirmed.

**II.    REPORT**

**A.    Procedural History**

Plaintiff, Molly Grinolds brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. Plaintiff filed DIB and SSI applications on February 26, 2003, alleging disability since December 23, 2002. (R. at 22, 59.) Her application was denied, and she filed a request for a hearing. (R. at 80.) A hearing was conducted before Administrative Law Judge Bruce Mazzarella ("ALJ") on February 23, 2006. (R. at 502.) The ALJ issued a decision on June 8, 2006, denying Plaintiff's claims. (R. at 59-68). On July 18, 2007, the Social Security Administration's Appeals Council remanded Plaintiff's case

1

to the ALJ. (R. at 123.) A second hearing was held on April 24, 2008 before ALJ Mazzarella. (R. at 552.) The ALJ issued his decision denying Plaintiff's claims on July 1, 2008. (R. at 22-35.) The Appeals Council denied Plaintiff's request for review on February 27, 2009. (R. at 9-11.) Plaintiff alleges that the ALJ's decision was not supported by substantial evidence. The Commissioner disagrees. Both Plaintiff and the Commissioner have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter is now ripe for review and disposition.

### B. The ALJ's Decision

In the decision dated July 1, 2008, ALJ Mazzarella made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2003.

2. The claimant has not engaged in substantial gainful activity since December 23, 2002, the alleged onset date.

3. The claimant had the following severe impairments: history of back related problems / scoliosis; borderline intellectual functioning (V75, P75, FS73 with reading comprehension skills at grade 3-4 level and math at grade 4 level); learning disability; depression / dysthymic disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit for an eight hour workday with only normal breaks and meal periods, stand and/or walk for an eight-hour workday with only normal breaks and meal periods, and lift and carry up to 20 pounds occasionally and 10 pounds frequently. The claimant is limited to low contact work with the general public, supervisors and co-workers. The claimant is limited to work that has little in the way of changes in work assignments. The claimant is limited to work that is not vocationally known to be inherently stressful. The claimant is limited to work that is not known to be "high production work."

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on May 29, 1980 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a 12th grade special education but operates at a low marginal level. She is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act from December 23, 2002, through the date of this decision.

(R. at 24-34.)

## C. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## D. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a

3

> presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

*Jesurum*, 48 F.3d at 117.

Plaintiff raises two issues in this appeal of the ALJ's decision. First, she argues that the ALJ improperly rejected certain medical evidence pertaining to her mental limitations while improperly giving greater weight to other evidence in the record. Second, Plaintiff argues that she could have met the listing for 12.05 Mental Retardation and Autism if her IQ score were adjusted downward by 5 points. Each of these arguments will be addressed in turn.

**1. Whether the ALJ improperly rejected medical evidence and improperly gave greater weight to other evidence in the record.**

Plaintiff points to the opinions of Dr. Bazzoui and licensed psychologist David Harten of the Guidance Center as being improperly rejected in favor of Dr. Zuckerman's evaluation. Furthermore, Plaintiff alleges that Dr. Zuckerman's own evaluation supports Plaintiff's claim of total disability and that the ALJ failed to properly consider the entirety of Dr. Zuckerman's opinion.

The "cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000)(*quoting Plummer*, 186 F.3d at 429). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

4

Furthermore, the ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Dr. David Harten performed a psychological evaluation of the Plaintiff on February 4, 2003, at the Guidance Center. (R. at 276.) It was noted that Plaintiff was currently being seen at the Guidance Center on an outpatient basis for dysthymic disorder, major depressive disorder, anxiety and coping problems. (*Id*.) Plaintiff was then taking Lexapro and seeing her therapist weekly. (*Id*.) Plaintiff complained of always having anxiety problems, especially in social situations. (*Id*.) Plaintiff stated that she had lost jobs in the past due to attendance problems related to her depression and social anxiety. (*Id*.) Dr. Harten noted that Plaintiff had some other medical problems including scoliosis and that there was a family history of depression. (R. at 277.)

Dr. Harten found plaintiff to be appropriately dressed although somewhat poorly groomed. (R. at 277.) He noted that Plaintiff had trouble with concentration and attention, and had to be encouraged and prompted to respond during the evaluation. (*Id*.) She was very slow at times during the evaluation, and Dr. Harten noted she had below average frustration tolerance and work tolerance. (*Id*.) Plaintiff's mental status was found to be depressed with a blunt, flat affect. (*Id*.) Additionally, Dr. Harten found Plaintiff's memory, judgment and reasoning to all to be impaired. (*Id*.)

Dr. Harten administered an IQ test to Plaintiff, which she scored a full scale score of 74. (R. at 277.) Dr. Harten stated that Plaintiff has basic functioning at a 2nd or 3rd grade level academically, with her most significant weakness seen in her ability to read and write. (R. at 278.) Dr. Harten opined that because of Plaintiff's significant functional limitations, he could not envision Plaintiff being able to sustain employment in unskilled work areas or maintain regular attendance

5

in competitive employment due to her psychological and social anxiety problems. (*Id*.) He assessed Plaintiff as having difficulties with even short and simple instructions, that she could not maintain sufficient attention for extended periods, that she would have difficulty with decision making and judgment and difficulty in performing at a consistent pace. (*Id*.)

Dr. Craig Zuckerman performed a consultative psychiatric evaluation of the Plaintiff on March 9, 2006. (R. at 416.) Dr. Zuckerman found Plaintiff to be informally but adequately groomed and her hygiene was within the normal range. (R. at 418.) Plaintiff claimed to still have problems with sadness that were "off and on," although she denied any suicidal ideation. (*Id*.) Dr. Zuckerman assessed Plaintiff's affect as being flat and noted she did not smile during the examination, although she was generally pleasant. (R. at 419.) Plaintiff stated that the only time she has anxiety is when she is working, although she denied any other problems with panic disorder or worrying. (*Id*.) Plaintiff was not able to complete serial seven subtraction and her short-term memory was below average. (*Id*.) Her full scale IQ score was 73 which reflected limited verbal and nonverbal skills. (*Id*.) Dr. Zuckerman diagnosed Plaintiff as having major depression, recurrent and in remission as well as borderline intellectual functioning. (R. at 420.) Dr. Zuckerman found that "[i]n terms of employability, [Plaintiff] likely would be challenged because of her mental health and intellectual and academic limitations." (*Id*.) Dr. Zuckerman recommended that Plaintiff find medical treatment for her depression and counseling for her mood difficulty and that she be referred to a sheltered workshop program. (R. at 421.) Dr. Zuckerman did find that Plaintiff was capable of managing benefits in her own name. (*Id*.)

On March 17, 2006, Dr. Zuckerman filled out a medical source statement of ability to do work-related mental activities. (R. at 422.) Dr. Zuckerman found Plaintiff to have moderate limitations in the ability to understand, remember and carry out detailed instructions. (*Id*.) He found only slight limitations in the ability to understand and remember short, simple instructions and to make judgments on simple work-related decisions. (*Id*.) He also found no limitations in Plaintiff's

6

ability to respond appropriately to supervision, co-workers and work pressures in a work setting. (R. at 423.)

On October 2, 2007, Plaintiff was given a psychiatric evaluation by Dr. Widad Bazzoui at the Guidance Center. (R. at 464.) Plaintiff had complaints of depression, loss of interest, inability to work, difficulty falling asleep and an inability to make decisions. (*Id*.) He stated that she is rather slow at various tasks because of her learning disability and that she as been unable to find a job that does not require a faster pace than she is capable of. (*Id*.) Dr. Bazzoui found Plaintiff to be presentable and appropriately dressed for the examination. (R. at 465.) She was slow in her reactions and answers, her affect was blunted and mood was anxious and sad. (*Id*.) Her intelligence was assessed to be in the borderline range and her insight and judgment was found not to be reliable. (*Id*.) Dr. Bazzoui diagnosed Plaintiff with dysthymic disorder and social anxiety and assessed her GAF score to be 45[1]. (R. at 466.)

On March 25, 2008, Dr. Bazzoui filled out a medical source statement regarding the nature and severity of Plaintiff's mental impairments. (R. at 467.) In the source statement, Dr. Bazzoui noted that Plaintiff would have extreme limitations in the ability to understand, remember and carry out detailed instructions and would have marked limitations in the ability to understand and remember short, simple instruction. (*Id*.) Plaintiff was also assessed to have marked limitations in the ability to make judgments on simple work related decisions and moderate limitations to carry out short simple instructions. (*Id*.) Plaintiff was found to be able to respond appropriately to supervision, co-workers, and work pressures. (R. at 468.) However, Dr. Bazzoui found Plaintiff to have marked limitations in the ability to interact appropriately with supervisors and respond appropriately to work pressures. (*Id*.) Plaintiff was also found to have moderate limitations with interacting appropriately

---

[1] The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job). *Id*. (emphasis in original).

7

with the public and co-workers. (*Id.*) Dr. Bazzoui noted that Plaintiff could be expected to be off task 10-15 minutes per hour. (*Id.*) Plaintiff's impairments would also increase if she were exposed to difficult or disagreeable customers, production demands, demands for precision, the ability to make quick, accurate and independent decisions, and the ability to make decisions in problem solving on a consistent basis. (*Id.*)

The ALJ found Dr. Harten's opinion to be inconsistent with Dr. Zuckerman's findings as well as the findings of a State Agency medical consultant. (R. at 31.**)** Furthermore, the ALJ pointed out that Plaintiff was only seen by Dr. Harten once thereby precluding him from being considered a treating physician under the regulations[2]. (*Id.*) The ALJ went on to state that Dr. Harten's opinions only stated conclusions of a vocational nature that were deserving of less weight than functional limitation opinions. (*Id.*) The ALJ also pointed out that Dr. Harten's conclusion that Plaintiff could not sustain unskilled employment was inconsistent with his report that indicated that Plaintiff had experience as a nurse's aide. (*Id.*)

Similarly, the ALJ decided not to give controlling weight to Dr. Bazzoui's opinions as they were inconsistent with Dr. Zuckerman and the State Agency medical consultant. (R. at 32.) The ALJ also gave less weight to Dr. Bazzoiu's opinion as he only saw the Plaintiff twice and his GAF score was inconsistent with the other Guidance Center therapists' treatment records. (*Id.*) The ALJ noted

---

[2]Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2)

8

that the other therapists had found Plaintiff's GAF score to be 60[3] at around the same time of Dr. Bazzoui's assessment. (*Id*.) It was further noted that Dr. Bazzoui's opinions were inconsistent with Plaintiff's other primary care providers, in that they did not indicate any serious psychiatric symptoms. (*Id*.)

The Commissioner correctly points out that the ALJ identified other medical evidence that conflicted with the opinions of Dr. Harten and Dr. Bazzoui. An ALJ may choose which opinion to give greater weight: "Where... the opinion of a treating physician conflicts with that of a non-treating , non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales*, 225 F.3d at 317 (*quoting Plummer*, 186 F.3d at 429). In reviewing the record as a whole, the ALJ did not simply reject the opinions of Dr. Harten and Dr. Bazzoui for no reason nor did the ALJ substituted his lay opinion for that of the medical doctors. Since the ALJ cited specific sources that conflicted with the above discussed medical opinion, the decision to reject those opinions is supported by substantial evidence in the record.

Plaintiff also raises the issue that the ALJ should have re-contacted Dr. Bazzoui for clarification concerning his GAF assessment that differed from that of Plaintiff's treating therapist. The Commissioner correctly points out, however, there is no duty to re-contact a physician when there is other conflicting evidence in the record. "Re-contact will proceed if "the evidence [the Commission] receive[s] from [claimant's] treating physician or psychologist or other medical source is inadequate for [the Commission] to determine whether [claimant is] disabled." *Johnson v. Commission of Social Security*, 529 F.3d 198, 205 (3d Cir. 2008). Furthermore, "the requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Id.*(*citing Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)). As discussed above, there was other evidence in the record that

---

[3]A GAF score between 51 and 60 indicated some moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functions (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000) (emphasis in original).

9

conflicted with Dr. Bazzoui's opinion, and the ALJ was able to make a determination as to Plaintiff's disability; therefore, no further clarification was required to be sought by the ALJ.

Plaintiff also claims that Dr. Zuckerman's opinion should have been considered to support a finding of disability insofar as Dr. Zuckerman's statement that Plaintiff would be challenged by her limitations does not indicate that she was totally disabled from performing work. Clearly, by his own assessment, he found Plaintiff to only have moderate and slight mental limitations which indicate that he was not opining that Plaintiff lacked the functional capacity to perform work. As a result, the ALJ properly relied upon Dr. Zuckerman's opinion in determining Plaintiff's residual functional capacity.

In reviewing the record as a whole, substantial evidence supports the ALJ's rejection of Dr. Harten and Dr. Bazzoui's opinions of disability. Substantial evidence also exists supporting the ALJ's reliance upon Dr. Zuckerman's opinion as reported by the ALJ to support Plaintiff's residual functional capacity determination.

**2.    Whether Plaintiff could have met Listing 12.05 C if her IQ score were adjusted downward by 5 points.**

Plaintiff argues that she also could have been found to meet Listing 12.05 C[4], which requires that the claimant have an IQ score of 60 through 70. Here, Plaintiff's IQ score was 74. Plaintiff argues there is an error of approximately 5 points when measuring IQ and that Plaintiff's score

---

[4]    12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Part 404, Sub.Pt. P, Appx. 1.

should be adjusted downward as a result. The Commissioner points out, however, that the United States Court of Appeals for the Third Circuit has held that IQ scores cannot be adjusted in order to meet the Listing requirements. *Burns v. Barnhart*, 312 F.3d 113, 125 (3d Cir. 2002) (*specifically overruling Halsted v. Shalala*, 862 F.Supp. 86, 89 (W.D. Pa. 1994) and concluding that reading an error range of five points into the regulation would violate the plain language of the regulation, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70."). As a result, there is no error in the ALJ's finding that Plaintiff did not meet Listing 12.05 C.

### III. CONCLUSION

For the foregoing reasons, the undersigned concludes that the ALJ's decision is supported by substantial evidence. Accordingly, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the Commissioner's decision denying Plaintiff's application for Social Security Disability Insurance Benefits and Supplemental Security Income be affirmed.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of serve to file written objection to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. No extensions of time will be granted. Failure to file timely objections may constitute waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

s/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
U.S. Magistrate Judge

Dated: July 22, 2010

cc: The Honorable Sean J. McLaughlin  
    United States District Judge

11